# EXHIBIT 1

Exhibit 1
10

RECEIVED FOR SCANNING
VENTURA SUPERIOR COURT
APR -3 2017

FELICIA AND LILOI TUITAMA
P.O. BOX 506
BOWDON, GA 30108—0506
Tel: (805) 983-1448
Fax: (805) 642-1287

Parties in pro per

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF VENTURA

| | |
|---|---|
| FELICIA TUITAMA, an individual; and LILOI TUITAMA, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-5N, a corporation; NATIONSTAR MORTGAGE, LLC, a corporation; NBS DEFAULT SERVICES, LLC, a corporation; SAGE POINT LENDER SERVICES, LLC (SPLS), a corporation; and DOES 1-10,<br><br>Defendants | Case No.:<br><br>VERIFIED COMPLAINT FOR:<br><br>1. Wrongful Foreclosure<br>2. Cancellation of Instruments<br>3. Quiet Title<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

Married Plaintiffs Liloi and Felicia Tuitama suffered an unlawful foreclosure on their house at 1831 Devonshire Drive, Oxnard, CA 93030. Plaintiffs now seek equitable and legal relief. On information and belief, Plaintiffs therefore now complain and allege as follows:

### 1. JURISDICTION

1. In actions on foreclosures, mortgages, and real property interests, the superior court in the county where that real property is located is proper. (California Code of Civil Procedure, section 392(a)(1-2)). This court is therefore the proper court.

## 2. DEMAND FOR JURY TRIAL

2. Plaintiffs reallege Paragraphs 1-1.

3. Plaintiffs demand jury trial on all causes and issues.

## 3. PARTIES

4. Plaintiffs reallege Paragraphs 1-3.

5. Plaintiffs Felicia and Liloi Tuitama (Plaintiffs) are and were at all times citizens and residents of Bowdon, Georgia, who owned the real property located at 1831 Devonshire Dr. Oxnard, CA 93030 (the Property), since 2002, by virtue of a 05/02/2002 deed of trust that enumerated the Property's legal description as follows:

> All that certain real property situated in the County of Venture, State of California, described as follows: Lot 230 of Tract No. 3051—3, in the City of Oxnard, County of Venture, State of California, as per map recorded in Book 112, Page(s) 11 through 17 inclusive of maps, in the office of the County Recorder of said County. Except therefrom the interest conveyed to Helen M. Borchard, Frances John Henson, Margaret Mary Anderson and Ralph William Borrchard, Jr., in and to the oil, gas, other hydrocarbon substances and minerals in and under said land, but without the right to enter on the surface thereof or within five hundred (500) feet beneath the surface as conveyed in the office of the County Recorder of said County. Deed recorded December 23, 1980 in Book 5801, page 35, of Official Records and as reserved in deed recorded January 30, 1981 as document No. 9998 and 10002 of Official Records. Also except the interest conveyed to Vincent Friedrich, Ellen C. Derricks, Barbara M. Friedrich, Mary Patrician Douglas, Betty Ann Dempsey and Jeanne M. Friedrich in and to the oil, gas, other hydrocarbon substances and minerals in and under said land but without the right to enter on the surface thereof or within five hundred (500) feet beneath the surface as conveyed in deed recorded December 23, 1980 in Book 5801, page 38 official records and as reserved in deeds recorded January 30, 1981 as document No. 999, 10000, and 10002. Also except the interest conveyed to Margaret D. Borchard, Francis Robert Borchard and Joseph Eugene Borchard in and to the oil, gas other hydrocarbon substances and minerals in and under said land but without the right to enter on the surface thereof or within five hundred (500) feet beneath the surface as conveyed in deed recorded December 30, 1980 in Book 5804, page 774, official records and as reserved in deed Recorder January 30, 1981 as document No. 9998 and 10002. Assessor's Parcel Number 181-0-171-055

6. On 08/24/2005, Plaintiffs refinanced in a Deed of Trust ("DOT") that designated Plaintiffs as Borrowers, America's Wholesale Lender (AWL) as Lender, and Recontrust as Trustee. Plaintiffs attached and incorporate a true copy of that DOT as Exhibit 9.

7. Defendant U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-5N ("USBNA") is and was at all relevant times a business entity, exact form unknown.[1] USBNA now claims, as trustee to Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-5N (the Trust), to own The Property.

8. Defendant NATIONSTAR MORTGAGE, LLC ("Nationstar") is and was at all times a Delaware corporation, form unknown.[2] Nationstar claims to be the DOT servicer.

9. Defendant NBS DEFAULT SERVICES, LLC ("NBS") is and was at all times a California business entity, form unknown.[3] NBS now claims to be the DOT Trustee. Plaintiffs allege that NBS never been the beneficiary, lender, original trustee, or the designated agent of the beneficiary.[4] Despite this, NBS recorded a 12/08/2016 Notice of Default[5] ("NOD") and sold Plaintiffs' house at a trustee sale (Sale) on 04/05/2016.

10. Defendant SAGE POINT LENDER SERVICES, LLC (SPLS) is a California business entity, exact form unknown.[6] Plaintiffs allege that SPLS has never been the beneficiary, lender, original trustee, or the designated agent of the beneficiary. Despite this, SPLS recorded a 07/24/2014 Notice of Default, a true copy of which Plaintiffs attached as Exhibit 16.

11. True names and capacities of DOES 1-10 remain to Plaintiffs unknown; until Plaintiffs discover these, they sue said Defendants by such fictitious names. When the Plaintiffs do ascertain true names and capacities of DOES 1-10, Plaintiffs will seek leave of court to amend this complaint to reflect that new information.

12. Plaintiffs are informed, believe, and thereon allege that at all relevant times, the Defendants were agents, employees, and/or servants of remaining Defendants, and that Defendants acted in course/scope of such agency, employment and/or servancy.

---

1 USBNA maintained at all times its principal business place at 1 Federal Street, Boston, M.A. 02110.
2 Nationstar at all times maintained its principal business place at 8950 Cypress Waters, Coppell, TX 75019.
3 NBS at all times had its principal business place at 14841 Dallas Parkway, Suite 300, Dallas, TX 75254.
4 NBS is not and was not a party to Exhibit 9 and realized no interests or rights from it.
5 Plaintiffs attached a true copy of that NOD as Exhibit 19 and incorporate it here.
6 SPLS at all times maintained its principal business place at 27201 Puerta Real, Mission Viejo, CA 92691.

## 4. STATEMENT OF FACTS

13. Plaintiffs reallege Paragraphs 1-12.

14. California Civil Code section 2924(a)(6) provides that:

No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest." California Civil Code section 2924(a)(6).

15. Plaintiffs on knowledge and belief allege that Defendants USBNA, Nationstar, NBS, and SPLS have never been the DOT beneficiary, lender, original trustee, or designated agent of the holder of the beneficial interest.

16. Plaintiffs allege that USBNA, Nationstar, NBS, and SPLS were not, each and all, legally incompetent under California Civil Code section 2924(a)(6) to record notices of default against Plaintiffs or the Property on 07/24/2014 and 12/08/2016.

17. Plaintiffs further allege that when NBS recorded Ventura County Recorder Instrument 20161208-00181851-0 (Exhibit 19), NBS's recordation was a violation of California Civil Code section 2924(a)(6), and *not lawful*, consistent with the meaning of California Civil Code § 1667. The NBS 12/08/2016 Notice of Default (20161208-00181851-0) was for these reasons *void*.

18. Plaintiffs allege that no Defendant here at any time had legitimate beneficial interest, estate, lien, right, or title in the Property, nor did any ever have lawful authority or power of sale.

19. The lender under the DOT (Exhibit 9) was America's Wholesale Lender ("AWL"). AWL was a Countrywide unit, but not registered as a corporation in California. Regardless, Countrywide ran AWL as a subordinate entity, in whatever form.

20. Plaintiffs next use terms common to mortgage securities, terms that were in 2005 unknown to them. Plaintiffs turn here for definitions to two sources:

   a) The GinnieMae MBS Guide ("GMBS");[7] and

   b) The Lehman XS Trust 2005-5N Trust Agreement ("LTA").[8]

---

[7] Government National Mortgage Association (Ginnie Mae) Mortgage-Backed Securities Guide ("GMBS"). https://www.ginniemae.gov/issuers/program_guidelines/Pages/mbsguidelib.aspx.

[8] The document that established the Trust. Plaintiffs could not attach LTA at filing time (it was too large and would be oppressive); but the prospectus is available at: http://www.secinfo.com/dsvrb.z3fz.a.htm.

21. Countrywide, before, in, and after 2005 was an *originator*, or a lender that moved mortgages to *issuers* like Lehman Brothers, firms that bundled mortgages into *pools* (collections of qualified loans) and derived from these *Mortgage-Backed Securities* (MBS) in final form: *certificates*.[9] These certificates were the securities that the Trust sold to investors.

22. This process is *securitization*, conversion to a security of another, already-existing something else. In MBS, that *something else* was a mortgage, or in trusts, hundreds or thousands of mortgages. Many trusts thus opened with $1 billion+ in assets.[10]

23. Securitization was not new, nor unlawful, nor high-risk, providing originators and issuers applied strict underwriting procedures. The early 2000s saw a highly lucrative market, though; many originators relaxed rather than tightened underwriting practices.

24. By dramatically lowering its underwriting standards, Countrywide rifled high-risk loans to pools in higher volume than any other originator (because it wrote more loans).

25. Countrywide also became known for grave errors and omissions in record-delivery and transfer policies. Countrywide routinely failed to orderly maintain mortgage records or deliver these timely to trusts. These were deeds, interest transfers, promissory notes, or papers that underpinned each mortgage security package's reality.

26. By 2011, these problems halted foreclosures in 30 states. The Federal Reserve System Board and Office of the Comptroller of the Currency ("OCC") issued a report finding that Countrywide consistently failed to transfer mortgage documents to issuing trusts.[11] These infirmities triggered lawsuits from *institutional investors* (labor unions, pensions) that purchased such certificates, especially from 530 Countrywide trusts.[12]

27. Plaintiffs allege that Countrywide, on 09/15/2005, was legally bound to transfer hundreds of mortgages, including ours, to the Trust, as per the Trust Agreement. For unclear reasons, Countrywide failed to make that transfer by the Trust's Closing Date (10/31/2005).[13]

---

9 GMBS, 1-10, MBS Program Participants: they who package pools are *issuers*; GMBS 4-1, Issuers and Responsibilities ("forming eligible pools," and "marketing or holding" the securities); and GMBS, 11-1. Issuer Responsibilities ("certification" and "final certification.")
10 The Trust was larger. ("As of the Cut-off date, the Mortgage Loans had an aggregate Scheduled Principal Balance of $2,757,128,955.71.") LTA, Page 12, *The Certificates*.
11 Inter-agency Review of Foreclosure Policies and Practices (2011). Federal Reserve.
12 In one OCC Consent Order, the Treasury Department wrote plainly: "Bank of America N.A., including in its role as successor to Countrywide, engaged in improper foreclosure practices to cover up the fact that issuing trusts lacked legal title sufficient to foreclose upon underlying mortgage loans." AA-EC-11-12. April 13, 2011. OCC, U.S. Department of Treasury.
13 See LTA, Page 8 ("Closing Date: October 31, 2005"). Article I. Definitions.

28. The County Recorder shows no assignment of DOT or beneficial interest in the Property from AWL or Countrywide to anyone on 09/15/2005 or any date thereafter (there are no recordings at all until 2011, six years after the Trust's closing date).

29. In 2007, Countrywide, which held 21 percent of American residential mortgages, collapsed. Countrywide found a suitor in Bank of America and on 01/08/2008, these secured approval for a merger plan. That plan called for Countrywide to form a new entity called Red Oak Corporation, which it did, on 01/11/2008. The plan, under SEC accession # 898822-8-108 and File # 1-12331-01, is public record.[14] Bank of America merged with Red Oak.

30. The County Recorder shows no assignment of DOT or beneficial interest in the Property between Countrywide, Red Oak, or Bank of America.

31. On 07/19/2011, Recontrust recorded a Corporation Assignment of Deed of Trust to the Trust, Instrument 20110719-0010560. Plaintiffs attached a true copy and incorporate it here as Exhibit 11. Plaintiffs allege that 20110719-0010560 was *void*, for two reasons. First, the Trust had closed to new loans on 10/31/2005, or six years before the 20110719-0010560 recordation.[15] Second, Countrywide's assets, including AWL, passed to Red Oak, and then to Bank of America. There is no evidence that AWL, Countrywide, or Bank of America made assignments of DOT to or anyone. 20110719-0010560 was merely means for Recontrust to (try to) cure Countrywide's failure to transfer DOT (and Plaintiffs' mortgage) to the Trust before 10/31/2005.

32. In documents, the Trust represents itself as *U.S. Bank National Association, as Trustee For Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-5N*. Authors of 20110719-0010560, however, represented it as *U.S. Bank National Association as Trustee For the LXS 2005-05N Trust Fund*. In casual correspondence, this deviance could be acceptable, but not for more exacting purposes (e.g. to make a lawful transfer).

33. Moreover, 20110719-0010560's last paragraph is suspect; it uses language that would render the transfer legitimate but for timeliness: ("TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE, AND TO BECOME DUE THEREON WITH INTEREST...") Such an instrument cannot transfer such elements (notes), nor can such an instrument transmit monies that will become due at some future date (this is contract language).

---

14 Order Approving the Acquisition of a Savings Association and Other Non-banking Activities. Federal Reserve Board, https://www.federalreserve.gov/newsevents/press/orders/orders20080605a1.pdf.
15 See Trust prospectus, Pages 7, 100 ("Closing Date: October 1, 2005). Article I. Definitions.

34. Plaintiffs further allege that "T. Sevillano," the "Assistant Secretary" who allegedly signed 20110719-0010560, did not have personal knowledge of the facts,, because Sevillano signed in Los Angeles County, whereas AWL records were in Delaware. 20110719-0010560 describes actions that would entail sending Plaintiffs' mortgage file through mail (the transfer describes physical files). The instrument suggests that banks use Recorder offices just as litigants use clerks (to file proofs). Plaintiffs allege that 20110719-0010560 (a void instrument, for reasons enumerated) is itself defective on its face.

35. After after recording 20110719-0010560 (an instrument that purported to transfer to the Trust *everything*), Recontrust recorded Exhibit 12, 20110718-00101349-0, Notice of Default and Election to Sell Under Deed of Trust. Assuming that 20110719-0010560 was a legitimate document with legal force, Recontrust would no longer retain capacity to record 20110718-00101349-0, nor initiate the foreclosure that 20110718-00101349-0 threatens, nor the sale that Exhibit 13, 20111017-00154002-0, later threatens. 20110718-00101349-0, taken at face value, contradicts its own existence (for, there cannot be more than one party empowered to foreclose). Plaintiffs allege that 20110718-00101349-0 is, like its predecessor, *void*.

36. Nearly two years passed between 20110718-00101349-0 and another recording.

37. On 07/24/2014, Defendant SPLS recorded a substitution of trustee naming Nationstar as beneficiary ("the undersigned is the Beneficiary") and that Nationstar nominated SPLS as the new trustee. Plaintiffs attached a true copy of that substitution as Exhibit 14 and incorporate it here, 20140724-00092096-0. Plaintiffs allege that this assignment was fraudulent and void. Even assuming that Recontrust's 10/18/2011 purported Corporation Assignment of Deed of Trust was valid (it wasn't), Recontrust made "transfer" to the Trust, not Nationstar. Nationstar could not accrue beneficiary status from 20110719-0010560, and Ventura Recorder shows no evidence that Nationstar received such beneficiary status from any other means.

38. On 07/24/2014, Defendant SPLS recorded a Notice of Rescission of Declaration of Default and Demand for Sale. Plaintiffs attached and incorporate a true copy of this SPLS notice as Exhibit 15 or 20140724-00092097. In it, SPLS purports to rescind Recontrust's 07/18/2011 Notice of Default, Exhibit 12, 20110718-00101349-0.

39. Also on 07/24/2014, SPLS recorded a new Notice of Default and Election to Sell Under Deed of Trust. Plaintiffs attached a true copy of that Notice as Exhibit 16 and incorporate it here, 20140724-00092098-0. Plaintiffs allege that when SPLS recorded 20140724-00092098-0, SPLS was not the DOT beneficiary, lender, original trustee, or designated agent of the holder of beneficial interest. Plaintiffs allege that as such, SPLS's recordation of 20140724-00092098-0 violated California Civil Code section 2924(a)(6), and it was *not lawful*, as per the meaning of California Civil Code § 1667. 20140724-00092098-0 was for these reasons void.

40. Another two years passed between 20140724-00092098-0 and other recordations.

41. On 08/29/2016, an organization of unknown form called Barrett, Daffin, Frappier, Treder & Weiss (Barrett) recorded Exhibit 17, 20160829-001232282-0, a Notice of Rescission of Notice of Default. Plaintiffs attached and incorporate that here. In 20160829-001232282-0, Barrett claims to appear as "agent" for a beneficiary. Barrett fails to name that beneficiary and fails to reveal how it attained said "agency." Barrett appeared from nowhere, as if the Property's previous title chain did not exist, and claimed authority to rescind 20140724-00092098-0.

42. On 12/07/2016, Defendant NBS recorded 20161207-0081465-0. Plaintiffs attached a true copy of it and incorporate here as Exhibit 18. 20161207-0081465-0 purports to substitute on behalf of the Trust NBS as the new trustee and claims the Trust as beneficiary.

43. On 12/08/2016, Defendant NBS recorded a Notice of Default and Election to Sell Under Deed of Trust, 20161208-00181851-0, Exhibit 19, a true copy of which Plaintiffs attach and incorporate here. Plaintiffs on knowledge and belief allege that on 12/08/2016, NBS was not the DOT beneficiary, nor was it the lender's trustee, mortgagee, beneficiary, or authorized agent. NBS's recordation violated California Civil Code section 2924(a)(6); it was *not lawful*, as per the meaning of California Civil Code § 1667. 20161208-00181851-0 was for these reasons *void*. Nonetheless, NBS sold Plaintiffs' house at a trustee sale (Sale) on 04/05/2016.

44. In California, only the trustee, mortgagee, or beneficiary can file a default notice. California Civil Code section 2924(a)(1), *Kachlon v. Markowitz*, (2008) 168 Cal. App. 4th 316, 334 [85 Cal.Rptr.3d 532]. Or, put another way, only a person entitled to enforce can foreclose. As such, a foreclosure undertaken by one with no authority to do so is wrongful for purposes of such an action. *Barrionuevo v. Chase Bank, N.A.* (N.D. Cal. 2012) 885 F.Supp.2d 964, 972.

45. Only the entity holding the beneficial interest under the deed of trust (the original lender, its assignee, or an agent of one of these) may instruct the trustee to commence and complete a nonjudicial foreclosure. (California Civil Code section 2924, subd. (a)(1); *Barrionuevo v. Chase Bank, N.A.*, supra, 885 F.Supp.2d at p. 972.) If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 644; Rest.2d Contracts, § 7, com. a, p. 20), the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure. (*Barrionuevo v. Chase Bank, N.A.*, at pp. 973-974.)

46. Plaintiffs allege that 20110719-0010560 was an assignment material to the chain by which Defendants sold Plaintiffs' house. 20110719-0010560 conferred no rights or interest to the Trust, and the Trust could not grant (to Nationstar or NBS) what it did not have. Plaintiffs allege that no Defendant here lawfully possessed power to enforce or foreclose, not on 04/05/2017, nor 12/08/2016, nor at any other time.

47. Plaintiffs on knowledge and belief further allege that Defendants had no means to accrue power to enforce, nor did 20110719-0010560 afford them that opportunity. Plaintiffs also allege that the Ventura Recorder record reveals no other assignments or transfers (or attempted assignments or transfers) that could have conferred such rights on Defendants. Defendants, in fact, triggered California's non-judicial foreclosure process absent authority, and by so doing, wrongfully foreclosed on Plaintiffs' house.

48. Defendant NBS, at behest of remaining Defendants, triggered California's non-judicial foreclosure apparatus (by filing 20161208-00181851-0, Notice of Default) and by carrying the process through to a trustee sale. NBS did this without agency authority from the lender, which NBS was required to have under California Civil Code section 2924(a)(b). Nor could the Trust confer on NBS authority, because the Trust had none to confer.

49. Plaintiffs dispute 20110719-0010560's validity and Plaintiffs allege that through and from 20110719-0010560, no legal interest under the DOT or associated promissory note (Note) transferred or transmitted to any Defendant, for the following:

49.[a] Plaintiffs allege that their loan was with AWL;

49.[b] To the extent MERS affected 20110719-0010560, Plaintiffs allege that MERS could act solely as nominee for AWL, but AWL had by then sold Plaintiffs' loan and no longer retained interest in it. Moreover, AWL had merged into Red Oak. These two conditions left behind nothing for MERS (or any other party) to represent as AWL agent or nominee, at least not with respect to Plaintiffs' Property, nor the DOT, nor the Note, nor any other beneficial interest therein;

49.[c] Plaintiffs allege that that "T. Sevillano," the "Assistant Secretary" who allegedly signed 20110719-0010560 did not have authority to sign on behalf of MERS, nor could Sevillano have had personal knowledge of the facts, because she had never seen or learned whether the mortgage loan was transferred, she never examined documents to attest its state, and she never viewed the DOT or Note;

49.[d] Plaintiffs further allege that "T. Sevillano," who in 20110719-0010560 purports to sign for MERS, is Tina Sevillano of Filmore, California, then a Recontrust employee, and not an agent, employee, or officer of MERS. As such, Sevillano could not sign for MERS;

50. 20110719-0010560 is not merely a deceptive and fraudulent "assignment;" it was, by strict interpretation, a *criminal* violation. California Penal Code section 115 provides that "Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony." Plaintiffs allege that Defendants' conduct falls squarely under section 115.

51. Plaintiffs on knowledge and belief allege that when NBS recorded Ventura Recorder Instrument 20161208-00181851-0 (Exhibit 19), NBS was not the beneficiary, lender, original trustee, or the designated agent of the beneficiary. Plaintiffs further allege that neither USBNA nor Nationstar was the legal, true beneficiary under DOT. USBNA and Nationstar never realized beneficial interest from 20110719-0010560, and thus could not confer on NBS what they did not themselves possess. NBS's recordation, absent authority, was thus a violation of California Civil Code section 2924(a)(6), and *not lawful*, as per meaning of California Civil Code § 1667. NBS's Notice of Default (20161208-00181851-0) was for these reasons *void*.

## 5. FIRST CAUSE OF ACTION
### (WRONGFUL FORECLOSURE/INJUNCTIVE RELIEF)
### AGAINST DEFENDANTS USBNA, NATIONSTAR, NBS, SPLS, AND DOES 1-10

52. Plaintiffs realleges allegations in Paragraphs 1-51.

53. As set forth above, the Property has been wrongfully foreclosed upon which property is unique. This foreclosure is wrongful in that the trustee that held the sale was not the proper trustee at time of sale and therefore, the sale of the Property is void as a matter of law and not in compliance with California Civil Code section 2924 et. Seq. Or, in the alternative, the party that held the sale and acquired the Property by way of a supposed bid was not the holder of the Note and was not the beneficiary of the DOT and could not have submitted a credit bid. The Holder of the Note and Beneficiary of the DOT was AWL. Despite this, the Trust, through its agents and servants NBS and Nationstar held the sale. Under California law, only the beneficiary of a deed of trust may hold a foreclosure sale. As a result, the Sale held by NBS on behalf of the Trust was in fact unlawful and fraudulent.

54. Plaintiff need not allege prejudice because a sale held by an entity other than the true trustee is void as a matter of law (as Plaintiffs have alleged herein), and because the claims made by Plaintiff do not concern procedural errors in the sale or process, but instead show that the parties that held the sale (NBS, Nationstar, the Trust) had no right to do so. As a result of the foreclosure sale of the Property by NBS, Nationstar, and the Trust, Plaintiffs suffered prejudice.

55. Plaintiffs have no duty or obligation to tender amounts claimed due on the subject Note and subject DOT in that to require them to do so to parties that have no right title or interest in the subject Property, Note, and DOT would be inequitable and because the foreclosure sale by Defendants and each of them is void as a matter of law as set forth herein and pursuant to the authority of Dimock v. Emerald Properties (2000) 81 Cal.App.4th 868, 876. The foreclosure sale is void as a matter of law when held by any entity other than the proper trustee. As set out herein, NBS was not the proper trustee but rather, received appointment by an entity that had no right to do so. Further, a real and true dispute exists as to the identity of the true holder of the subject Note and the true Beneficiary of the DOT, based on the public record enumerated herein.

56. As a direct and proximate result of the wrongful foreclosure on the subject Property, Plaintiffs have been damaged in sums exceeding $50,000.00, subject to proof at trial.

57. Plaintiffs further request that the court issue an order that the Sale of the subject Property by NBS, Nationstar, and the Trust was a void act of no legal affect.

58. Plaintiffs will suffer irreparable harm consisting of the loss of their unique and valuable Property should the relief herein not be granted, for which there is no adequate remedy at law.

### 6. SECOND CAUSE OF ACTION
### CANCELLATION OF INSTRUMENTS
### AGAINST ALL DEFENDANTS

59. Plaintiff realleges allegations in Paragraphs 1-58.

60. There are in existence the following documents in Ventura County Recorder:

    60.a] A 07/19/2011 Recontrust Corporation Assignment of Deed of Trust, purporting to transfer all grants, assigns, and transfer to "U.S. Bank National Association, as Trustee For Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-5N." Ventura Recorder Instrument 20110719-0010560;

    60.b] A 07/18/2011 Notice of Default and Election to Sell Under Deed of Trust, Ventura Recorder Instrument 20110718-00101349-0, a true copy of which Plaintiffs attached hereto as Exhibit 12;

    60.c] A 10/17/2011 Recontrust Notice of Trustee's Sale, Ventura County Instrument 20111017-00154002-0, a true copy of which Plaintiffs attached hereto as Exhibit 13;

    60.d] A 07/24/2014 SPLS Substitution of Trustee, Ventura Recorder Instrument 20140724-00092096-0, a true copy of which Plaintiffs attached hereto as Exhibit 14;

    60.e] A 07/24/2014 SPLS Notice of Rescission of Declaration of Default and Demand for Sale, Ventura County Recorder Instrument 20140724-00092097, a true copy of which Plaintiffs attached hereto as Exhibit 15;

    60.f] A 07/24/2014 SPLS Notice of Default and Election to Sell Under Deed of Trust, Ventura County Recorder Instrument 20140724-00092098-0, a true copy of which Plaintiffs attached hereto as Exhibit 16;

60.g] A 12/07/2016 NBS Substitution of Trustee, Ventura County Recorder Instrument 20161207-0081465-0, a true copy of which Plaintiffs attached hereto as Exhibit 18;

60.h] A 12/08/2016 NBS Notice of Default and Election to Sell Under Deed of Trust, Ventura County Recorder Instrument 20161208-00181851-0, a true copy of which Plaintiffs attached hereto as Exhibit 19.

61. The above documents initially appear valid on their faces, but they are unlawful, defective, void, and of no force or affect regarding Plaintiffs' (or Defendants') interest in the Property.

62. These above-mentioned documents are a cloud on Plaintiffs' title and to the subject Property, which tends to depreciate its market value, restricts Plaintiff's full use and enjoyment of it, and hinder Plaintiff's unrestricted rights to the Property.

63. If the above-enumerated unlawful, defective, void documents are not canceled, Plaintiffs have a reasonable apprehension that they will suffer harm or less, especially to parties with no right, title, or interest in or to the subject Property.

## 7. THIRD CAUSE OF ACTION
## QUIET TITLE
## AGAINST ALL DEFENDANTS

64. Plaintiffs reallege allegations in Paragraphs 1-63.

65. Plaintiffs Felicia and Liloi Tuitama are and were at all times owners of the real property located at 1831 Devonshire Dr. Oxnard, CA 93030 (the Property), that bears this description:

> All that certain real property situated in the County of Venture, State of California, described as follows: Lot 230 of Tract No. 3051—3, in the City of Oxnard, County of Venture, State of California, as per map recorded in Book 112, Page(s) 11 through 17 inclusive of maps, in the office of the County Recorder of said County. Except therefrom the interest conveyed to Helen M. Borchard, Frances John Henson, Margaret Mary Anderson and Ralph William Borrchard, Jr., in and to the oil, gas, other hydrocarbon substances and minerals in and under said land, but without the right to enter on the surface thereof or within five hundred (500) feet beneath the surface as conveyed in the office of the County Recorder of said County. Deed recorded December 23, 1980 in Book 5801, page 35, of Official Records and as reserved in deed recorded January 30, 1981 as document No. 9998 and 10002 of Official Records.

Also except the interest conveyed to Vincent Friedrich, Ellen C. Derricks, Barbara M. Friedrich, Mary Patrician Douglas, Betty Ann Dempsey and Jeanne M. Friedrich in and to the oil, gas, other hydrocarbon substances and minerals in and under said land but without the right to enter on the surface thereof or within five hundred (500) feet beneath the surface as conveyed in deed recorded December 23, 1980 in Book 5801, page 38 official records and as reserved in deeds recorded January 30, 1981 as document No. 999, 10000, and 10002. Also except the interest conveyed to Margaret D. Borchard, Francis Robert Borchard and Joseph Eugene Borchard in and to the oil, gas other hydrocarbon substances and minerals in and under said land but without the right to enter on the surface thereof or within five hundred (500) feet beneath the surface as conveyed in deed recorded December 30, 1980 in Book 5804, page 774, official records and as reserved in deed Recorder January 30, 1981 as document No. 9998 and 10002. Assessor's Parcel Number 181-0-171-055

66. Plaintiffs seek to quiet against the following claims of Defendants:

66.a] A 07/24/2014 SPLS Notice of Default and Election to Sell Under Deed of Trust, Ventura County Recorder Instrument 20140724-00092098-0, a true copy of which Plaintiffs attached hereto as Exhibit 16;

66.b] A 12/07/2016 NBS Substitution of Trustee, Ventura County Recorder Instrument 20161207-0081465-0, a true copy of which Plaintiffs attached hereto as Exhibit 18;

66.c] A 12/08/2016 NBS Notice of Default and Election to Sell Under Deed of Trust, Ventura County Recorder Instrument 20161208-00181851-0, a true copy of which Plaintiffs attached hereto as Exhibit 19.

67. Defendants USBNA, Nationstar, NBS, SPLS, and DOES 1-10 do not today have and they have never had any equitable or legal beneficial interest in the Property.

68. Plaintiff names in this action all persons or entities unknown claiming a) any equitable or legal estate, interest, lien, right, or title in the Plaintiffs' real property as described in this First Verified Complaint that is adverse to Plaintiffs' title; or b) any cloud on Plaintiffs' title to the Property.

69. The claims of each unknown Defendant are without any equitable or legal estate, interest, lien, right, or title in the Plaintiffs' real property as described in this First Verified Complaint, and said Defendants do not have any equitable or legal estate, interest, lien, right, or title in the Plaintiffs' real property.

70. Plaintiffs have no duty or obligation to tender amounts claimed due on the subject Note and subject DOT in that to require them to do so to parties that have no right title or interest in the subject Property, Note, and DOT would be inequitable and because the foreclosure sale by Defendants and each of them is void as a matter of law as set forth herein and pursuant to the authority of *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 876. The foreclosure sale is void as a matter of law when held by any entity other than the proper trustee. As set out herein, NBS was not the proper trustee but rather, received appointment by an entity that had no right to do so. Further, a real and true dispute exists as to the identity of the true holder of the subject Note and the true Beneficiary of the DOT, based on the public record enumerated herein.

## RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

On the first cause of action,

1. For actual or compensatory damages of $50,000.00 subject to proof at trial;

2. That this court issue a temporary restraining order and preliminary injunction enjoining the eviction of Plaintiffs or their tenants pending full disposition of this action on the merits, and for permanent injunctive relief, should Plaintiffs prevail on the merits, and such further relief as it just and proper.

3. For a declaration that Defendants' sale of the Property was a void act of no legal affect.

On the second cause of action:

1. For an order canceling the following documents:

a] A 07/19/2011 Recontrust Corporation Assignment of Deed of Trust, purporting to transfer all grants, assigns, and transfer to "U.S. Bank National Association, as Trustee For Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-5N." Ventura Recorder Instrument 20110719-0010560;

b] A 07/18/2011 Notice of Default and Election to Sell Under Deed of Trust, Ventura Recorder Instrument 20110718-00101349-0, a true copy of which Plaintiffs attached hereto as Exhibit 12;

c] A 10/17/2011 Recontrust Notice of Trustee's Sale, Ventura County Instrument 20111017-00154002-0, a true copy of which Plaintiffs attached hereto as Exhibit 13;

[Tuitama V. U.S. Bank, National Association, et al – Plaintiffs' First Verified Complaint]

Exhibit 1
25

d] A 07/24/2014 SPLS Substitution of Trustee, Ventura Recorder Instrument 20140724-00092096-0, a true copy of which Plaintiffs attached hereto as Exhibit 14;

e] A 07/24/2014 SPLS Notice of Rescission of Declaration of Default and Demand for Sale, Ventura County Recorder Instrument 20140724-00092097, a true copy of which Plaintiffs attached hereto as Exhibit 15;

f] A 07/24/2014 SPLS Notice of Default and Election to Sell Under Deed of Trust, Ventura County Recorder Instrument 20140724-00092098-0, a true copy of which Plaintiffs attached hereto as Exhibit 16;

g] A 12/07/2016 NBS Substitution of Trustee, Ventura County Recorder Instrument 20161207-0081465-0, a true copy of which Plaintiffs attached hereto as Exhibit 18;

h] A 12/08/2016 NBS Notice of Default and Election to Sell Under Deed of Trust, Ventura County Recorder Instrument 20161208-00181851-0, a true copy of which Plaintiffs attached hereto as Exhibit 19.

On the third cause of action:

1. An order that quiets title against Defendants known and unknown and that cancels these documents:

66.a] A 07/24/2014 SPLS Notice of Default and Election to Sell Under Deed of Trust, Ventura County Recorder Instrument 20140724-00092098-0, a true copy of which Plaintiffs attached hereto as Exhibit 16;

66.b] A 12/07/2016 NBS Substitution of Trustee, Ventura County Recorder Instrument 20161207-0081465-0, a true copy of which Plaintiffs attached hereto as Exhibit 18;

66.c] A 12/08/2016 NBS Notice of Default and Election to Sell Under Deed of Trust, Ventura County Recorder Instrument 20161208-00181851-0, a true copy of which Plaintiffs attached hereto as Exhibit 19.

On all causes of action:

1. Cost of suit herein.

Dated: Monday, April 3, 2017

We, the Plaintiffs in this action hereby declare that we have read the foregoing First Verified Complaint and know the contents thereof and believe the matter stated to be of our own knowledge, except those matters that we alleged on information and belief, and as those, we believe them.

We hereby declare under penalty of perjury that the foregoing is true and correct, and this verification was done in Bowdon, Georgia on Sunday, April 2, 2017.

*(signature)*
Felicia Tuitama, party in pro per
P.O. BOX 506
BOWDON, GA 301080

*(signature)*
Lilei Tuitama, party in pro per
P.O. BOX 506
BOWDON, GA 301080

Page 17 of 17
[Tuitama V. U.S. Bank, National Association, et al – Plaintiffs' First Verified Complaint]

Exhibit 1
27